1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALEXANDER H.,

                Plaintiff,

      v.

MARTIN O'MALLEY, et al.,[1]

                Defendants.

Case No. 23-cv-04051-SI

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 10, 14

The parties have filed cross-motions for summary judgment in this Social Security appeal. Dkt. Nos. 10, 14.  Having considered the parties' papers and the Administrative Record ("AR"), the Court hereby GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment.  The Court REMANDS this action for further administrative proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

**I.**     **Administrative Proceedings**

On September 21, 2019, plaintiff Alexander H. protectively filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  AR 15.  Plaintiff alleged disability beginning May 1, 2006.  His application was denied initially and upon reconsideration.  *Id.*  Plaintiff then filed a written request for a hearing, which took place by telephone on June 7, 2022.  Plaintiff was represented by counsel at the hearing.  Plaintiff testified,

---

[1] In the case caption, the Court substitutes Martin O'Malley, who is the current Commissioner of Social Security, for his predecessor, Kilolo Kijakazi.  *See* Fed. R. Civ. P. 25(d).

as did medical expert Dr. Jay Toews and vocational expert Dr. Sabrina Singleton. *Id*. At the hearing, plaintiff amended his alleged onset date to September 21, 2019. *Id*. at 43-44. On August 1, 2022, Administrative Law Judge ("ALJ") Brian M. Steger issued an unfavorable decision. *Id*. at 28. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. *Id*. at 1.

Plaintiff then filed this action for judicial review under 42 U.S.C. § 405(g). Dkt. No. 1.

## II.     Medical and Personal History

Plaintiff was forty-one years old when he filed for Social Security benefits, alleging disability for post-traumatic stress disorder ("PTSD"), depression, and a learning disability. *Id*. at 64-65. In sixth grade, plaintiff was diagnosed with a learning disability and placed in remedial classes. *Id*. at 574 (Catlin Report). He continued to struggle academically and eventually dropped out of high school. *Id*. Although plaintiff attempted to work at several fast-food restaurants, he struggled to understand and perform his assigned tasks and would be let go after only a few days. *Id*. He eventually stopped working and began engaging in criminal behavior, resulting in several incarcerations. *Id*. In 2009, plaintiff was sentenced to nine years in prison on assault charges. *Id*. After being released in 2018, plaintiff struggled to find long-term housing and was living in a shed as of December 2021. *Id*. His most recent employment was at P.F. Chang's, where he worked as a dishwasher for several months in 2019-2020 before quitting after a co-worker made several racist comments toward him. *Id*. at 284, 290, 293, 574.

### A.     Disability and Function Reports

In a November 2019 Function Report[2] plaintiff described his daily activities: he had no problems with his personal care; he prepared his own meals three times per week; he needed no help or encouragement to do household chores; he went outside once per day and was able to use public transportation alone; he shopped in stores twice a month; he was able to pay bills and manage his

---

[2] The function report itself is undated, *see* AR 331, but SSA records indicate it was completed on November 5, 2019. *See* Dkt. No. 9-2 at 2 (Ex. 3E).

United States District Court
Northern District of California

money; he read, although "not often"; he spent time with others and did not need reminders nor accompaniment to go places; and he had no problems getting along with others. *Id*. at 325-29.

In a February 2020 Disability Report plaintiff described changes to his medical conditions beginning December 2019. *Id*. at 333. He reported feeling "more depressed and less motivated" and was "not sleeping well and ha[d] lost appetite." *Id*. He also stated that he no longer went out and tended to isolate because he preferred to be alone. *Id*. at 335.

On April 29, 2020, plaintiff completed a second Function Report, stating he struggled to process information and directions, and that he was forgetful and "always sleepy" due to his medication.[3] *Id*. at 340. At this point, plaintiff reported being homeless.[4] *Id.* Regarding his daily activities, plaintiff alleged that he spent his days watching television, sleeping, and occasionally working out; he had difficulty sleeping and staying asleep; he needed reminders to tend to his personal care and to take his medication; he no longer prepared his own meals because he would get confused; he no longer used public transportation or shopped; he could no longer handle money because he was forgetful and would get confused; he "would attend groups in the community" but he preferred to be alone most of the time. *Id*. at 341-45. Plaintiff reported that his medical conditions affected his ability to lift, stand, walk, talk, hear, remember, complete tasks, concentrate, understand, follow instructions, use his hands, and get along with others. *Id*. at 345. He also reported needing frequent clarification of instructions and not handling stress or changes in routine well due to frustration and confusion. *Id*. 345-46.

**B.     Psychological Evaluations**

**1.     Dr. Rita Sampaio, Ph.D. (Examining Consultant)**

On November 26, 2019, plaintiff met with Dr. Rita Sampaio, who conducted a psychological

---

[3] Plaintiff had assistance in completing the April 2020 Function Report. AR 347. The section of the report asking which medications he was taking is left blank, with the following remark below: "Client was not sure which medications had what side effects. Client at times would not be sure how to answer questions and would get confused." *Id.*

[4] In the November 2019 Function Report, plaintiff reported living in a house with family. AR 324.

United States District Court
Northern District of California

evaluation.  *Id*. at 451.  Dr. Sampaio noted plaintiff "was not forthcoming about past history or present mood issues, reporting 'I guess,' 'I don't know,' 'I'm not sure,' even when leading questions about anxiety/depression." *Id*. at 451-52.  During the mental status examination, Dr. Sampaio found it "[s]omewhat difficult to establish rapport" with plaintiff due to his "[d]etached" attitude.  *Id*. at 453.  According to Dr. Sampaio, plaintiff was easily frustrated, easy to give up, and required "encouragement and redirection to be on tasks."  *Id*.

Plaintiff denied having physical limitations due to his medical conditions but claimed inability to work because he was forgetful, could not concentrate, and disliked being around people. *Id*.  Dr. Sampaio reported that plaintiff was independent in his basic activities of daily living, including preparing his own meals, driving, using public transportation or ride-share services, shopping, showering, and dressing himself.  *Id*.  Plaintiff claimed to spend his days "thinking, doing laundry, watching news on TV."  *Id*.

Dr. Sampaio administered a series of tests.  The Mini Mental State Examination ("MMSE") found plaintiff to have mild to moderate difficulty following simple directions and moderate to marked difficulty following complex directions.  *Id*. at 455-56.  Dr. Sampaio observed that plaintiff presented with "fair to good effort," although he needed "encouragement and guidance to continue and complete tasks."  *Id*.  The MMSE concluded that plaintiff's overall cognitive functioning was moderately impaired.  *Id*.  On the Weschler Adult Intelligence Scale – Fourth Edition plaintiff was found to have borderline verbal comprehension and extremely low perceptual reasoning, working memory, processing speed, and a full-scale IQ of 64.  *Id*. at 457.  On the Weschler Memory Scale – Fourth Edition plaintiff showed borderline immediate memory, delayed memory, auditory memory, and visual memory.  *Id*. at 458.  Dr. Sampaio diagnosed plaintiff with borderline intellectual functioning, unspecified depression disorder, and unspecified anxiety disorder.  *Id*. at 459.

Based on these findings and a review of accompanying documentation, Dr. Sampaio found plaintiff had mild to moderate limitations in the ability to understand, remember, and perform simple/repetitive written and oral instructions.  She found moderate to marked limitations in the ability: to understand, remember, and perform complex/detailed written and oral instructions; to interact appropriately with others; to maintain concentration, attention, and persistence/consistency

United States District Court
Northern District of California

4

during a normal workday (i.e., plaintiff needs "encouragement and guidance to remain and complete task"); to adapt to the usual stresses of a competitive work environment (i.e., plaintiff "[s]eems to have difficulty adapting to change" and "[b]ecomes qui[te] overwhelmed"); to perform activities within a schedule and maintain regular attendance (i.e., plaintiff is "a slow processor"); and to complete a normal workday or workweek without interruptions from a psychiatric condition. *Id*. at 460-61.

### 2. Dr. Laura Catlin, Psy.D. (Examining Consultant)

In December 2021, Dr. Laura Catlin completed a psychological disability evaluation report based on a telehealth evaluation. Dr. Catlin conducted a mental status exam and administered a series of tests. *Id*. at 575-77. The Montreal Cognitive Assessment found plaintiff to have a mild cognitive impairment in his attention, language, abstraction, and delayed recall. *Id*. at 575-76. The Beck Depression Inventory showed symptoms of severe depression, including feeling "fatigued and tired all day" and lacking "energy to do the things he kn[ew] he should do" despite "sleep[ing] most of the day." *Id*. at 576. The PTSD Checklist indicated symptoms of PTSD, including emotional numbness, difficulty falling and staying asleep, and "angry outbursts he couldn't control." *Id*. at 577.

Dr. Catlin offered the diagnostic impressions of: major depressive disorder, recurrent, severe; PTSD; and mild cognitive impairment. *Id*. at 578. Dr. Catlin also identified other, relevant medical conditions, including borderline intellectual functioning, adult antisocial behavior, and problems related to plaintiff's imprisonment, release from prison, homelessness, employment, social environment, and insufficient social insurance or welfare support. *Id*. Dr. Catlin's report states plaintiff "is functionally illiterate and has a low IQ." *Id.* at 573, 579.

Based on these findings and a review of accompanying documentation, Dr. Catlin stated that plaintiff "will have great difficulty performing well and consistently in the work place" and "understanding, remembering and/or applying information given to him," "even basic information." *Id*. at 579. She further stated that plaintiff "will have difficulty getting along with coworkers, taking instruction from a manager or supervisor, [and] working with the public." *Id*. Specifically, Dr.

Catlin found plaintiff's "PTSD and depressive symptoms prime him to be . . . unable to navigate most social interaction in an appropriate manner" and "will make concentrating and paying attention to details of a job very difficult." *Id.* She concluded that plaintiff's "mental health symptoms will cause difficulties with keeping up appropriate pace of the work place," "impair" his concentration, "significantly diminish" his ability to persist through frustrating or challenging work assignments, "severe[ly] impair" his ability to "organize himself appropriately to be able to arrive on time and consistently for employment," and "limit" his ability to "function independently, appropriately, effectively, and on a sustained basis." *Id.* Dr. Catlin also described plaintiff as "vulnerable to decompensation" and having "minimal capacity to adapt to changes in the environment or to demands that are not already part of his life." *Id.*

In the functional assessment, Dr. Catlin determined that plaintiff had marked limitation in understanding, remembering, and applying information; moderate limitation in concentrating, persisting, or maintaining pace; moderate limitation in adapting or managing himself; and mild limitation in interacting with others. *Id.* at 580-81. Dr. Catlin anticipated plaintiff would be absent from work for four or more days per month, and would be "off task" more than 30 percent of the time. *Id.* at 582. Dr. Catlin found plaintiff's impairments will cause him difficulty "[a]ttending appointments regularly, taking medications, and consistently engaging with treatment." *Id.*

### 3.    Dr. Jay Toews, Ed.D. (Non-Examining Consultant)

Dr. Jay Toews, a non-examining psychologist, reviewed plaintiff's records and testified as an impartial medical expert at plaintiff's hearing on June 7, 2022. Dr. Toews found evidence of a mild intellectual deficiency (Listing 12.05) and an adjustment disorder with depressed mood (Listing 12.04). *Id.* at 47. Dr. Toews reviewed plaintiff's functional limitations with and without the use of drugs and/or alcohol and opined that limitations on plaintiff's ability to understand, remember, or apply information was marked to extreme with drugs and/or alcohol but moderate without drugs and/or alcohol; that limitations on his concentration, persistence, and pace were marked with drugs and/or alcohol but moderate without drugs and/or alcohol; and that limitations on his ability to relate to and interact with others was marked regardless of drugs and/or alcohol. *Id.*

6

at 47-48.  Dr. Toews noted that plaintiff "functionally, [p]robably would not do well interacting with the general public, but would be able to interact with one or two co-workers and . . . do simple, repetitive types of work activity."  *Id*. at 50.  Further, "due to [plaintiff's] cognitive deficiencies," Dr. Toews strongly recommended a payee be arranged should plaintiff be awarded benefits.  *Id*. at 48.

## LEGAL STANDARD

The Social Security Act authorizes an Article III court to review final decisions of the Commissioner.  42 U.S.C. § 405(g).  This Court may enter a judgment affirming, modifying or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.  *Id*. Factual findings of the Commissioner are conclusive if supported by substantial evidence.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001).  The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record taken as a whole.  *Tackett v. Apfel,* 180 F.3d 1094, 1097-98 (9th Cir. 1999).  Substantial evidence is "more than a mere scintilla but less than a preponderance."  *Id*. at 1098.  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks omitted).  To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion.  *Tackett*, 180 F.3d at 1098.  "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## ALJ DECISION

On August 1, 2022, the ALJ issued a decision finding plaintiff not disabled under the Social Security Act.  AR 28.  In determining plaintiff's disability status, the ALJ applied the five-step analysis in accordance with 20 C.F.R. § 416.920.  At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since September 21, 2019, plaintiff's amended onset date.

United States District Court
Northern District of California

*Id*. at 17-18.  At step two, the ALJ found plaintiff suffered severe impairments from depression, PTSD, and borderline intellectual functioning.  *Id*. at 18.  However, the ALJ declined to find plaintiff's alleged asthma and gastrointestinal impairments were severe.  *Id*.  At step three, the ALJ found plaintiff's mental impairments did not meet or medically equal the criteria of one of the Listing of Impairments, specifically Listings 12.04 (depressive, bipolar and related disorders), 12.05 (intellectual disorder), and 12.15 (trauma- and stressor-related disorders).  *Id*. at 19.

The ALJ then determined plaintiff's RFC and found plaintiff able:

> to perform a full range of work at all exertional levels but with the following non-exertional limitations: he is able to perform work that does not require driving as a part of work duties or require any work-related exposure to hazards, such as unprotected heights and unguarded moving machinery; he is capable of traveling to and from a single workplace but is otherwise incapable of traveling for work; he is able to understand, remember, and carry out simple instructions and tasks and work at a consistent pace throughout the workday at simple tasks but not at a production rate pace where each task must be completed within a strict time deadline, such as work on a conveyor belt or assembly line, or within high quota demands, such as work with an hourly quota requirement; he is able to make occasional simple work-related decisions in a job involving only occasional changes in a routine work setting; he is able to sustain concentration and persist at simple tasks, as described, up to 2 hours at a time with normal breaks during an 8-hour workday; he is incapable of in-person face-to-face interaction with the general public and is incapable of performing any tasks requiring customer service duties; and he is capable of no more than occasional interaction with co-workers and supervisors but is incapable of performing tasks requiring conflict resolution, requiring him to direct the work of others or persuade others, or requiring him to work jointly or cooperatively with a co-worker or co-workers on tandem tasks or in a team environment.

*Id*. at 21.

At step four, the ALJ found plaintiff had no past relevant work.  *Id*.  At step five, after considering plaintiff's age, education, and RFC, and taking into account the hearing testimony of the vocational expert, the ALJ found that jobs exist in significant numbers in the national economy that plaintiff can perform, including a dishwasher, hospital cleaner, and industrial cleaner.  *Id*. at 27. Accordingly, the ALJ concluded plaintiff was not disabled under the Social Security Act.  *Id*. at 28.

## DISCUSSION

Plaintiff moves for summary judgment, contending that the ALJ erred (1) in finding plaintiff's gastrointestinal impairments not severe at step two, (2) in evaluating plaintiff's symptom testimony, and (3) in evaluating the medical opinions.  Defendant cross-moves for summary

United States District Court
Northern District of California

8

judgment, contending the ALJ properly determined plaintiff's severe impairments and RFC.  *See* Dkt. No. 14.  Defendant contends substantial evidence supports the ALJ's decision.

## I.      Step Two

Plaintiff challenges the step-two finding as to his gastrointestinal impairments.  Step two of the five-step sequential process requires an ALJ to determine whether a claimant has a severe impairment.  20 C.F.R. § 416.920(a)(4)(ii).  To be found disabled, a claimant must have an "impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities . . . ."  *Id.* § 416.920(c).

Plaintiff contends the ALJ's failure to find his gastrointestinal impairments severe at step two constitutes harmful error because the record makes clear that his "GERD [gastroesophageal reflux disease] and constipation symptoms have more than a minimal effect on his ability to work, and that these symptoms have impacted [him] over the course of many years."  Dkt. No. 10 at 7-9.  Defendant argues that even if the Court finds error at step two, such error is "inconsequential to the ultimate nondisability determination" because the "limited range of simple, unskilled work would accommodate any restrictions needed due to abdominal pain."  Dkt. No. 14 at 2.

At step two, as to plaintiff's irritable bowel syndrome and asthma, the ALJ found "these impairments resolved, are controlled with medication, and/or failed to meet the durational requirement."  AR 18-19.  The ALJ reasoned that "[a]fter reports of constipation, [plaintiff] was diagnosed with [irritable bowel syndrome ("IBS")] in July 2018" but "[i]n October 2018, he reported his abdominal pain and constipation had improved with medication."  *Id*. at 18.  The ALJ further reasoned that plaintiff was treated for chronic constipation in December 2019, September 2020, February 2021, and October 2021" but "[i]n October 2021, his physician noted recent abdominal/pelvis [CT] scans did not show any acute findings and [plaintiff] refused a new CT scan."  *Id*.

The Court agrees with plaintiff that the ALJ erred at step two, and that the error was not harmless.  Error may be harmless where an ALJ finds an impairment is non-severe at step two but still factors the impairment into subsequent steps in the five-step analysis.  *See Burch*, 400 F.3d at

682-84 (ALJ's failure to explicitly consider the claimant's obesity at step two constituted harmless error where the ALJ considered the claimant's obesity at step five).  As plaintiff notes, that did not happen here.  The ALJ *both* found that plaintiff did not have a severe gastrointestinal impairment at step two *and* did not factor that impairment into the RFC or later steps of the disability determination.  When determining the RFC, the ALJ must consider both severe and not severe impairments.  *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).

There is substantial evidence in the record of plaintiff's gastrointestinal impairments. During his incarceration, plaintiff was clinically diagnosed with IBS in April 2018; constipation in March 2017, December 2017, March 2018, April 2018, and December 2018; and abdominal pain in January 2017, July 2017, March 2018, and October 2018.  AR 874-82.  Although plaintiff's gastrointestinal issues generally improved with treatment, *see id.* at 978, 980, 997, he continued to seek medical attention following his release from prison.  Plaintiff presented with gastrointestinal complaints at Highland Hospital in June 2019, December 2019, January 2021, February 2021, and October 2021; and at the Kaiser Emergency Department in March 2020, September 2020, May to June 2021, and October 2021.  *Id*. at 463, 471-72, 489, 493, 544-47, 607-08, 639-40, 713-14, 759-60, 833-36.  He was repeatedly seen for alleged abdominal pain, constipation, and nausea and vomiting, and his hospital records note his history of constipation and GERD.  *See id*.  Plaintiff was also repeatedly prescribed medications but experienced minimal to no relief, although he admits he did not take his medications consistently.  *See, e.g.*, *id*. at 463, 489, 547, 596.

Given the above evidence of plaintiff's gastrointestinal issues and his repeated seeking of treatment from January 2017 through October 2021, substantial evidence in the record does not support the ALJ's finding at step two that the IBS "resolved, [was] controlled with medication, and/or failed to meet the durational requirement."[5]  *See id.* at 18.  At minimum, even assuming the

---

[5] Defendant contends that "some of the evidence [p]laintiff cites pre-dates the relevant period" and "there is no evidence that the few remarkable findings from the relevant period showed limitations that lasted or could be expected to last for a continuous period of 12 months." Dkt. No. 14 at 2.  However, an ALJ has a duty to consider all medical evidence, including relevant evidence that predates the claimant's alleged onset date of disability.  20 C.F.R. § 416.920(a)(3); *see also Williams v. Astrue*, 493 F. App'x 866, 868-69 (9th Cir. 2012) (finding harmful error where ALJ did not consider medical opinions from up to six years prior to alleged onset date); *Hopton v. Saul*, No.

ALJ was correct in finding IBS non-severe, the ALJ should have taken this impairment into account when determining plaintiff's RFC.[6]  On the record here, the failure to account for the gastrointestinal issues was error, and because the gastrointestinal issues could have impacted the RFC finding, the Court cannot find the error was harmless.

## II.     Plaintiff's Subjective Statements

Plaintiff also argues the ALJ erred in discounting his statements regarding his gastrointestinal and mental health issues.

### A.     Legal Standard

An ALJ's analysis of a claimant's subjective pain or symptoms is governed by a two-step process.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id*. at 1036 (internal quotation marks and citation omitted).  "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so."  *Id.* (internal quotation marks omitted).  This clear and convincing standard "is not an easy requirement to meet" and is "the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014).

### B.     Analysis

In determining the RFC, the ALJ found that plaintiff's impairments could reasonably be

---

18-CV-05435-JSC, 2020 WL 836679, at *8 (N.D. Cal. Feb. 20, 2020) (medical evidence predating a plaintiff's alleged onset date may have more than "limited relevance" where an ALJ "does not identify any circumstance that would make [the evidence] wholly irrelevant").

[6] The ALJ's RFC analysis briefly mentions plaintiff's stomach pain and constipation but does not otherwise discuss, analyze, or account for these impairments.  *See* AR 22.

1    expected to produce the alleged symptoms but concluded that plaintiff's statements concerning the

2    intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the

3    evidence in the record.  AR 22.  The ALJ cited no evidence of malingering.

4         At the outset, the Court finds that the ALJ's apparent rejection of plaintiff's symptom

5    testimony was not sufficiently specific under the applicable legal standard.  The ALJ's "findings,

6    properly supported by the record, must be sufficiently specific to allow a reviewing court to

7    conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not

8    arbitrarily discredit a claimant's testimony regarding pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345-

9    46 (9th Cir. 1991) (internal quotation marks and citation omitted).  Here, it is unclear from the ALJ's

10   decision precisely which testimony the ALJ was rejecting, and based on which facts in the record.

11   There is no section of the decision where the ALJ "link[ed]" plaintiff's testimony "to the particular

12   parts of the record supporting [his] non-credibility determination." *Brown-Hunter v. Colvin*, 806

13   F.3d 487, 494 (9th Cir. 2015) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014)).  This

14   alone constitutes reversible error.

15        Notwithstanding the above, the Court proceeds to analyze the rejection of plaintiff's

16   testimony regarding gastrointestinal impairments and mental health issues, as plaintiff specifically

17   challenges these portions on appeal.

18

19                     **1.    Gastrointestinal Issues**

20        As noted in Section I, *supra*, the ALJ found plaintiff's IBS was non-severe because it

21   "resolved, [was] controlled with medication, and/or failed to meet the durational requirement."  AR

22   18.  The ALJ cited an October 2018 medical note that plaintiff's abdominal pain and constipation

23   had improved with medication, and an October 2021 CT scan showing no acute findings.  *Id.* (citing

24   Ex. 7F at 106-107, Ex. 6F at 160, 232).[7]  At the hearing, plaintiff testified that his "stomach

25   problems" cause him to "throw[] up and constantly us[e] the restroom," and that these symptoms

26   occur "[v]ery frequently.  It's like back and forth.  Once that happens, like constipation, and then I

27   _____

28        [7] As the ALJ noted, plaintiff refused a later CT scan.  *See* AR 838.

United States District Court
Northern District of California

have to take some kind of medicine.  It kind of makes me more drowsier." *Id*. at 53.

By finding IBS non-severe at step two and by failing to address the gastrointestinal issues at the RFC stage, the ALJ implicitly rejected plaintiff's testimony.  The Court agrees with plaintiff that substantial evidence does not support the ALJ's conclusion that plaintiff's IBS had resolved, and that one 2018 treatment note and one unremarkable CT scan in 2021 do not provide clear and convincing reasons to reject plaintiff's testimony in light of the record as a whole.  Plaintiff testified in June 2022 that his stomach problems are ongoing and very frequent, and the record shows at least twice-yearly visits to the emergency department for gastrointestinal issues from 2019 through 2021. *See* Section I, *supra*.

### 2.    Mental Health Issues

The ALJ also implicitly rejected plaintiff's statements regarding the impact of his mental health symptoms.  In his April 2020 function report, plaintiff stated that he has difficulties processing information, has a hard time understanding a process or direction, is forgetful, and is always sleepy due to his medications.  AR 340.  In discounting plaintiff's statements regarding his mental impairments, the ALJ reasoned in part that plaintiff "has not sought ongoing treatment for his symptoms of depression and [PTSD]." *Id*. at 23.  However, the Ninth Circuit has repeatedly instructed that, in the context of mental health issues, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)).  The ALJ must "consider[] possible reasons [the claimant] may not comply with treatment or seek treatment consistent with the degree of his or her complaints.  We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints."  SSR 16-3p, *available at* 2017 WL 5180304, at *9 (S.S.A. Oct. 25, 2017).[8]  Relevant considerations include whether the claimant is "able to afford treatment

---

[8] Social Security Rulings "do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).  They "'reflect

[or] access . . . free or low-cost medical services," and whether the claimant "structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms." *Id*. at *9-10.  Plaintiff argues that "evidence of severe mental illness and poverty are acceptable reasons for failure to seek or comply with treatment," Dkt. No. 10 at 14, and indeed the ALJ did not consider plaintiff's distress in social settings or his homelessness as relevant factors in his treatment history.  The ALJ has a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).  Here, the record does not indicate, and the ALJ did not explore, why plaintiff did not seek ongoing mental health treatment, though Dr. Catlin opined that "[h]is depressive symptoms cause him . . . to feel unmotivated to do much" and that his symptoms and limitations cause him to have difficulty "attending appointments regularly, taking medications, and consistently engaging with treatment."  *See* AR 578, 582.  At minimum, the ALJ should have inquired into the lack of treatment before using this to reject plaintiff's testimony.

Again, the lack of specificity in the ALJ's decision makes it difficult to discern the precise reasons the ALJ rejected plaintiff's subjective statements about mental impairments.  To the extent the ALJ relied on a lack of mental health treatment, that was not a clear and convincing reason supported by substantial evidence in the record to reject plaintiff's statements.

In sum, the Court finds that the ALJ's rejection of plaintiff's symptom testimony did not comport with the "demanding" standard required in the Ninth Circuit.  *See Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

### III.    Other Issues

Plaintiff contends the ALJ erred in evaluating the persuasiveness of the medical opinions of Dr. Sampaio, Dr. Catlin, and Dr. Toews.  He also takes issue with the ALJ's RFC determination. The Court finds the errors in addressing the gastrointestinal impairments and in failing to address or

the official interpretation of the [SSA] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.'"  *Id*. (quoting *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006)).

explain the rejection of plaintiff's symptom testimony could have impacted the ALJ's assessment and weight given to the medical opinions, which in turn impacted step three and the RFC.  For instance, in weighing Dr. Toews's opinion, the ALJ twice cited to plaintiff's lack of treatment for depression and PTSD.  *See* AR 25.  The ALJ also cited lack of mental health treatment as a reason to discount Dr. Sampaio's opinion that plaintiff has marked limitations in certain areas of mental functioning.  *Id.* at 24.  For the reasons explained above, *see* Section II, the ALJ improperly failed to consider whether plaintiff had acceptable reasons for not seeking mental health treatment.  This error appears to have impacted the analysis of the medical opinions at the RFC stage.  Accordingly, the Court need not reach this question but instead will remand the matter for further administrative proceedings.[9]

Plaintiff asks that the Court remand this case for an immediate award of benefits.  However, remand for award of benefits is appropriate only where "there are no outstanding issues on which further proceedings in the administrative court would be useful."  *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2017).   Here, further proceedings would be useful regarding plaintiff's gastrointestinal impairment, which plaintiff concedes has not been corroborated by objective medical evidence, and on the question of why plaintiff has not sought ongoing mental health treatment.  *See Trevizo*, 871 F.3d at 682 ("The decision whether to remand a case for additional evidence, or simply award benefits[,] is within the discretion of the court.") (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).

As stated above, the Court finds the ALJ committed harmful error in failing to account for the gastrointestinal impairments and in evaluating plaintiff's symptom testimony.  Those errors

---

[9] Nevertheless, the Court expresses concern about the opinion of Dr. Toews, which the ALJ found "somewhat persuasive."  *See* AR 25.  Dr. Toews opined that plaintiff would be disabled when he is abusing drugs or alcohol but that he wouldn't be disabled without the substance use.  However, as the ALJ noted, there is no indication of drug or alcohol use during the claimed disability period.  *See id.*  Thus, it is unclear why Dr. Toews was opining about the materiality of drugs and alcohol at all, unless he was confused about the relevant time period.  Moreover, Dr. Toews testified that "most individuals with this level of intellectual functioning acquire a lot of functional street smarts and function fairly well, so [plaintiff's] ability to understand, remember, and apply information would be no more than moderate."  *See id.* at 48.  The Court questions whether Dr. Toews's "street smarts" statement passes the "supportability" test laid out by the regulations.   *See* 20 C.F.R. § 404.1520c(c)(1).

United States District Court
Northern District of California

could have impacted the weighing of the medical opinions of Drs. Sampaio, Toews, and Catlin.

Accordingly, the Court remands this case for any further development of the record that would be useful and for a new decision.  The ALJ shall re-evaluate plaintiff's symptom testimony, applying the correct standard for rejecting plaintiff's testimony; shall consider the impact of plaintiff's gastrointestinal impairments at step two and/or at the RFC stage; and shall reweigh the medical opinions as appropriate.

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion for summary judgment and DENIES defendant's cross-motion for summary judgment.  The Court REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

**IT IS SO ORDERED**.

Dated: September 24, 2024

_____
SUSAN ILLSTON
United States District Judge